## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **VICTORIA CLOSSER**, | Case No. 3:13-cv-01432-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN,** Acting Commissioner of Social Security, | |
| Defendant. | |

Bruce W. Brewer, P.O. Box 421, West Linn, OR 97068. Of Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, District of Oregon, and Ronald K. Silver, Assistant United States Attorney, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201-2902; Richard M. Rodriguez, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Ms. Victoria Closser ("Ms. Closser") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Ms. Closser's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the following reasons the Commissioner's decision is AFFIRMED.

PAGE 1 – OPINION AND ORDER

## STANDARDS

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Ms. Closser's Application

Ms. Closser protectively filed an application for DIB on February 2, 2010, alleging a disability onset date of February 9, 2003. AR 17. Her date last insured under the Social Security Act was December 31, 2007. AR 17. Ms. Closser was born on June 4, 1965 and was 37 years old

at the time of the alleged onset of disability and 42 years old on her date last insured. AR 152.
Ms. Closser alleged disability due to fibromyalgia, depression, back and hip pain, asthma,
restless leg syndrome, benign essential tremor, sleep apnea, dyslexia, morbid obesity, and heel
spurs. AR 170.

Ms. Closser's application initially was denied on May 27, 2010. AR 95. She requested
reconsideration and the application again was denied on September 8, 2010. AR 104, 106.
Ms. Closser then requested a hearing and one was held on December 28, 2011 in front of an
Administrative Law Judge (the "ALJ"). AR 32-72, 110, 120. The ALJ issued a written decision
on January 25, 2012, finding that Ms. Closser was not disabled between the alleged onset date
and the date last insured and denying the application. AR 14-27.

On March 15, 2012, Ms. Closser filed a request for review by the Appeals Council and
that request was denied on June 12, 2012, rendering the ALJ's decision the final decision of the
Commissioner. AR 1-3, 7. Ms. Closser seeks review of the ALJ's decision denying her
application for DIB.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity
by reason of any medically determinable physical or mental impairment which . . . has lasted or
can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.
§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for
determining whether an applicant is disabled within the meaning of the Social Security Act."
*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.
§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive.
20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of
questions:

PAGE 3 – OPINION AND ORDER

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing

"work which exists in the national economy"). If the Commissioner fails to meet this burden, the

claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that

the claimant is able to perform other work existing in significant numbers in the national

economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d

at 1099.

## C.  The ALJ's Opinion

The ALJ began by noting that Ms. Closser last met the insured requirements of the Social

Security Act on December 31, 2007. AR 19. The ALJ then engaged in the sequential analysis

required by regulation. At step one, he determined that Ms. Closser did not engage in any

substantial gainful activity between her alleged onset date of February 9, 2003 and her date last

insured of December 31, 2007. AR 19. At step two, he determined that Ms. Closser had severe

impairments related to fibromyalgia and obesity. AR 19-20.

At step three, the ALJ first found that Ms. Closser's impairments or combination of

impairments do not meet or medically equal the severity of an impairment listed in 20 C.F.R.

Pt. 404, Subpt. P, App. 1. AR 21. The ALJ then determined that Ms. Closser has the RFC to

perform a full range of sedentary work with the ability to lift and carry five pounds frequently

and ten pound occasionally, stand or walk two hours in an eight hour day, and sit for six hours in

an eight hour day. AR 21.

In determining Ms. Closser's RFC, the ALJ found that her medically determinable

impairments could reasonably be expected to cause her alleged symptoms, but that her

allegations regarding the extent of those symptoms and the resulting limitations are not fully credible. AR 22. The ALJ considered evidence of Ms. Closser's daily activities; her symptoms related to fibromyalgia, back spasms and pain, depression, and sleep apnea; notes from her visits with medical professionals; and written testimony from her husband. AR 21-26.

At step four, the ALJ found that Ms. Closser is capable of returning to her past relevant work as a call technician or a computer programmer because the work activities required by those jobs are not precluded by her RFC. AR 26. Having found that Ms. Closser could return to her past relevant work, the ALJ did not engage in step five of the sequential analysis and did not determine whether Ms. Closser could adjust to other work. The ALJ ultimately decided that Ms. Closser was not disabled during the relevant period and denied her application for DIB. AR 27.

### DISCUSSION

Ms. Closser argues that the ALJ erred by: (A) not including depression as a severe impairment at step two, (B) improperly rejecting the credibility of Ms. Closser's testimony as to her symptoms, (C) giving little weight to the opinion of a treating physician, and (D) improperly determining that Ms. Closser could return to her past relevant work at step four. Each argument is addressed in turn.

**A.  Determination of Severe Impairment at Step Two**

Ms. Closser argues that the ALJ erred by failing to find that her depression was a severe impairment at step two of the sequential analysis. She asserts that her depression more than slightly affected her ability to engage in basic work-related activities by causing memory and concentration issues that would make it impossible for her to return to her past relevant work requiring skilled functions. The Court finds that the ALJ did not err at step two, and any error that the ALJ may have committed at step two would be harmless.

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). The claimant bears the burden of establishing that she has a severe impairment at step two by providing medical evidence. 20 C.F.R § 404.1512. An impairment or combination of impairments is not severe "*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original). The ALJ is required to consider the combined effect of all of the claimant's impairments on his or her ability to function. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). If the ALJ determines that a claimant is severely impaired at step two, the ALJ continues with the sequential analysis, considering all of the claimant's limitations, whether or not they are severe. Social Security Ruling ("SSR") 96-9p, 1996 WL 374184 (July 2, 1996). Step two is "merely a threshold determination of whether the claimant is able to perform his past work." *Hoopai v. Astrue*, 499 F.3d 1071, 1076. If an ALJ fails to consider limitations imposed by an impairment at step two but considers them at a later step in the sequential analysis, any error at step two is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Burch*, 400 F.3d at 682.

To determine the severity of an alleged mental impairment, the ALJ must follow the technique required by 20 C.F.R. § 404.1520a. That technique requires the ALJ to determine first whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). The ALJ must then rate the degree of functional limitation in four areas: activities of daily living; social functioning; limitations in concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The first three areas are rated on a five point scale of limitation: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). Episodes of decompensation are rated as none, one or two, three, or four or more. *Id.* If the first three areas of

functioning are rated as "none" or "mild" and episodes of decompensation is rated as "none" the mental impairment is generally not severe. *Id.* § 404.1520a(d)(1).

Here the ALJ considered the severity of Ms. Closser's depression in detail and in accordance with the requirements of § 1520a. He found that Ms. Closser's depression is a medically determinable mental impairment, but that it was not severe because it did not impose more than minimal limitations on Ms. Closser's ability to perform basic mental work activities for a period greater than 12 months. AR 19. The ALJ found that Ms. Closser had mild limitations in her activities of daily living, no limitations in her social functioning, and mild limitations in her concentration, persistence, or pace. AR 20. He also found that Ms. Closser had no episodes of decompensation and her depression was therefore not severe. AR 20.

In support of his determination the ALJ cited evidence throughout the record. The ALJ cited notes from a January 20, 2006 appointment with Dr. Nina Bergquam, during which Dr. Bergquam explicitly diagnosed Ms. Closser with "[m]ild recurrent depression." AR 275. Dr. Bergquam also noted during that visit that Ms. Closser was "not 'suicidal'" but was "just more blue and frustrated with her health" and was open to increasing her depression medication because she was "only on 10 mg a day." AR 275. The ALJ also cited treatment notes from January and August 2008 visits with Dr. Brett Rath, after Ms. Closser's date last insured, that indicated that her depression had become more severe, but that she was also in good spirits and that her medications were being increased. AR 20, 266, 269. The ALJ considered Ms. Closser's testimony that she regularly draws, knits, watches television, does light cleaning and prepares meals, AR 212-14, that she messages with friends, spends time with her husband, calls family, and goes out for meals, AR 216, and that she can follow spoken instructions well and her ability to pay attention to something depends on her interest in it. AR 20, 212-14, 216-17. The ALJ

cited the written testimony of Ms. Closser's husband stating that Ms. Closser gets along well with authority figures and follows spoken instructions well. AR 20, 201.

There is evidence in the record that indicates that Ms. Closser was depressed, at times to the point of having suicidal thoughts, AR 53, and being "almost tearful" during a doctor's appointment. AR 278. Treatment notes from 2005 show that Ms. Closser reported feeling "foggyheaded" with difficulty concentrating. AR 613. The record also suggests that Ms. Closser reported her depression worsening at the end of 2007 and then significantly at the beginning of 2008. AR 267-70. However, much of the evidence in the record relating to Ms. Closser's depression and, particularly, its possible link to memory and concentration issues, falls outside of the relevant time period. Although Ms. Closser did report that her depression was worse just a few weeks before her date last insured, she also reported that she was "handling the stress okay," and Dr. Rath seemed to link the worsening to "seasonal affective disorder," suggesting exercise and light therapy. AR 270. It was not until after her date last insured that Ms. Closser reported that her depression was worse than it had been "in decades." AR 269. Treatment notes relay "spells" of confusion that began in 2011, more than three years after Ms. Closser's date last insured, and soon disappeared. AR 613, 620-24. A disability report filled out by an interviewer noted memory issues, but the interview occurred in April 2010. AR 165-68. Although there is evidence that might support a different conclusion, the ALJ's determination that Ms. Closser's depression did not constitute a severe impairment between her alleged onset date and date last insured is supported by substantial evidence.

Even if the ALJ erred by finding that Ms. Closser's depression was not a severe impairment, he still resolved step two in Ms. Closser's favor, finding that she was severely impaired and moving on to step three of the sequential analysis. Further, the ALJ later discussed

Ms. Closser's depression and its alleged effects on her ability to work while assessing

Ms. Closser's credibility and RFC. Because the ALJ's decision that Ms. Closser's depression

was not severe did not alter his decision at step two in Ms. Closser's favor and the ALJ included

Ms. Closser's depression in his later analyses, any error regarding Ms. Closser's depression at

step two would be harmless.

**B.  Ms. Closser's Credibility**

Ms. Closser argues that the ALJ erred by rejecting Ms. Closser's testimony for lack of

credibility without providing clear and convincing reasons for doing so. She contends (1) that the

ALJ improperly addressed Ms. Closser's activities of daily living, (2) that the ALJ's reasoning

that the alleged extent of Ms. Closser's symptoms is not supported by the medical evidence was

impermissible, (3) that the ALJ failed to offer a reason for rejecting Ms. Closser's alleged need

for recumbency, (4) that the ALJ failed to show that Ms. Closser's lack of substantial earnings

before 1996 had any connection to her credibility, and (5) that the ALJ's use of Ms. Closser's

failed work attempt after the alleged onset date was improper.

There is a two-step process for evaluating the credibility of a claimant's own testimony

about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*,

572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has

presented objective medical evidence of an underlying impairment 'which could reasonably be

expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504

F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)

(en banc)). When doing so, the claimant "need not show that her impairment could reasonably be

expected to cause the severity of the symptom she has alleged; she need only show that it could

reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282

(9th Cir. 1996).

PAGE 10 – OPINION AND ORDER

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, 1996 WL 374186 (July 2, 1996). The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

### 1.  Activities of Daily Living

Ms. Closser contends that the ALJ erred by failing to consider limits on her activities of daily living and by failing to make specific findings about the transferability of those activities to the workplace. The Court finds that the ALJ's interpretation of Ms. Closser's activities is reasonable and based on sufficient evidence and is a specific and legitimate reason for diminishing Ms. Closser's credibility.

A claimant's activities of daily living may form the basis of an adverse credibility finding where the claimant's activities either contradict his or her other testimony or meet the threshold for transferable work skills. *See Orn*, 495 F.3d at 639. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (quotation marks and citations omitted). Even if the evidence supports a more reasonable interpretation than the one reached by the ALJ, so long as it is susceptible to more than one rational interpretation, the ALJ's interpretation must be upheld. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

The ALJ in this case found that Ms. Closser's activities of daily living are inconsistent with her allegations of totally disabling pain. He noted that Ms. Closser is able to draw, knit, watch television, read, play videogames, sing, and clean; she can feed, pet, and brush her pets; at times, she was able to participate in Pilates three times a week; and she drives a car and goes

grocery shopping. AR 199, 212-13. The record also contains evidence, however, that

Ms. Closser can only do many of these activities for 15 minutes or less at a time, and must

perform some tasks, like mopping, from an office chair. AR 198. Other evidence suggests that

when Ms. Closser and her husband go grocery shopping, Ms. Closser stays in the car. AR 67.

There is substantial evidence to support both the ALJ and Ms. Closser's interpretations of

Ms. Closser's activities of daily living, and under such circumstances the ALJ's interpretation of

that evidence is upheld. *Burch*, 400 F.3d at 679. Accordingly, the Court finds that the ALJ's

conclusion that Ms. Closser's activities of daily living contradict her claims of disabling pain is

supported by substantial evidence.

Although the ALJ did not make a transferability finding, that was not his basis for

discounting Ms. Closser's testimony. Rather, the ALJ found that Ms. Closser's allegation of

totally disabling pain was contradicted by her activities of daily living. The ALJ's failure to

make a transferability finding is not an error. Even if the ALJ was required to make a

transferability finding, failing to do so was a harmless error because where, as here, an ALJ

provides multiple reasons for an adverse credibility finding, that finding may be upheld even if

one of the reasons is not. *See Batson*, 359 F.3d at 1197.

## 2. Objective and Clinical Findings

The ALJ gave as one reason for discounting Ms. Closser's credibility his conclusion that

Ms. Closser's alleged symptoms are "disproportionate to the objective and clinical findings"

contained in the record. Ms. Closser argues that this is an impermissible basis for discounting her

credibility. The Court finds that the ALJ did not err by considering the lack of medical evidence

supporting the severity and extent of Ms. Closser's symptoms.

Although lack of medical evidence cannot form the sole basis for discounting pain

testimony, it is a factor that the ALJ can consider in his credibility analysis. *Burch*, 400 F.3d

PAGE 13 – OPINION AND ORDER

at 681. The ALJ cited treatment notes from April 28, 2003, showing that Ms. Closser was

diagnosed with fibromyalgia but was walking three times a week and was doing Pilates; the

notes indicated that Ms. Closser believed that activity had aggravated a bone spur in her heel.

AR 290. The same notes show that other than Ms. Closser's obesity and heel pain, all other

systems were "negative" and she had normal muscle strength, sensation, and gait. AR 290-91.

The ALJ also cited notes from Ms. Closser's chiropractor, who indicated on February 20, 2003

that Ms. Closser's back pain was asymptomatic and, on September 13, 2005, that Ms. Closser

had "trigger point sensitivity at the sacrum," and "palpitory tenderness in the lumbar region

from L3 through the sacrum." AR 23, 427, 447. The ALJ pointed to records from

December 2004, August 2005, and April 2006 appointments with a nurse practitioner, noting that

Ms. Closser reported being unable to stand and walk for more than thirty minutes at a time, had

low back pain, was doing "relatively well," was unable to lie flat and slept in a "V-type"

position, did not have pain going down her legs, and was doing Tai Chi and aquatic classes.

AR 23, 243-45, 282.

  Finally, the ALJ cited notes from 2007 through 2009, taken by Ms. Closser's primary

care physician Dr. Rath, reporting that Ms. Closser's fibromyalgia was helped by acupuncture,

and that she was in good spirits and without edema in her extremities before her date last insured

on December 31, 2007. AR 24, 271. After the date last insured, Dr. Rath noted that Ms. Closser

had no edema, was not short of breath, was walking several times a day and doing light weights,

had hip and lower back pain that was infrequent, had a limited range of motion in her spine, had

"made favorable progress to conservative chiropractic care," and that her fibromyalgia was

stable. AR 24, 266, 532. With respect to Ms. Closser's obesity, the ALJ noted that in June 2005

Ms. Closser had lost no weight after adhering to a 1200 calorie diet and that Dr. Bergquam

PAGE 14 – OPINION AND ORDER

refused Ms. Closser's request for a prescription for a motorized scooter. AR 24, 278. In July 2005, Dr. Foley noted that Ms. Closser was morbidly obese and, though Ms. Closser's ankles swelled a bit more in warm weather, she had no calf swelling and no pain. AR 24, 277.

The record is otherwise replete with treatment notes from Ms. Closser's doctors that support both the conclusion that her symptoms were not disabling, and that they were. For example, notes from Ms. Closser's chiropractor, Dr. Hubbs, repeatedly report that Ms. Closser's complaints of back pain were "mild," "minor" or "minimal" and often followed instances of physical labor. AR 414-19, 421-24. At other times, Dr. Rath noted that Ms. Closser's fibromyalgia was getting worse, AR 270. Dr. Bergquam noted that Ms. Closser had sciatica pain that made sitting uncomfortable, AR 280, and Dr. Hubbs repeatedly cited fixation at various points in Ms. Closser's spine. AR 414-19, 421-24. Although there is evidence in the record to support a conclusion contrary to the one reached by the ALJ, where the evidence supports multiple different conclusions, including the ALJ's reasonable interpretation, the ALJ's interpretation must be upheld. *Burch*, 400 F.3d at 679. The ALJ's conclusion is supported by substantial evidence.

Ms. Closser cites a number of opinions from the Ninth Circuit for the proposition that an ALJ may not reject a claimant's testimony on the grounds that it is inconsistent with the medical evidence in the record. Pl.'s Opening Br. 7, Dkt. 14. Those cases, however, assert only that an ALJ may not rely *exclusively* on a lack of objective medical evidence to discredit a claimant's testimony regarding the severity of the claimant's pain, not that an ALJ may not consider a lack of evidence as a factor in a credibility determination. *See, e.g.*, *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995).

PAGE 15 – OPINION AND ORDER

Had the ALJ relied solely on the lack of medical evidence supporting the alleged severity of Ms. Closser's symptoms, his credibility determination would have been made in error. Here, however, the ALJ gave multiple other reasons for rejecting the credibility of Ms. Closser's testimony, including all of the reasons challenged in this appeal, and therefore did not err by also considering the lack of medical evidence.

### 3. Need for Recumbency

Ms. Closser argues that the ALJ erred by failing to identify any evidence contradicting Ms. Closser's "professed need for recumbency," which would make it impossible for Ms. Closser to return to any work because "a worker cannot lie down on the job." Pl.'s Opening Br. 7, Dkt. 14. In support of this contention Ms. Closser cites only to the ALJ's written decision, which does not address a "need for recumbency," and a passage in the hearing transcript. *Id.* The hearing transcript, however, does not actually suggest a "need for recumbency." Rather, Ms. Closser is quoted in the transcript explaining that during the time of her alleged disability she was getting up and walking for about 15 minutes every hour, then sitting down again. AR 62. Although she stated that she "would lay down quite a bit throughout the day," she also stated that after 20 minutes of standing she would "[s]it down or lie down, one or the other." AR 62-63. Ms. Closser stated multiple times that she would either sit down *or* lie down, not clearly expressing a specific need to lie down rather than sit. AR 62-63. The Court finds that the ALJ did not err by failing to address Ms. Closser's alleged need for recumbency because the record does not show that Ms. Closser professed to have such a need.

### 4. Lack of Substantial Earnings Before 1996

Ms. Closser contends that the ALJ "failed to specify" how the fact that Ms. Closser had no substantial earnings prior to 1996 undermined Ms. Closser's credibility. Pl.'s Opening Br. 7-8, Dkt. 14. The ALJ, however, explicitly stated that Ms. Closser's lack of substantial

earnings before 1996 and her testimony that she relies on her parents for financial assistance "raises questions as to the claimant's motivation to work." AR 24. The ALJ also cited Ms. Closser's testimony that when she left her job as a call technician in 2003 she "found that not working was a relief."

The Ninth Circuit has upheld credibility determinations by ALJs based in part on findings that a claimant lacked motivation to work, allowing the ALJ to draw reasonable inferences from the evidence in the record on this point. *See, e.g., Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ here drew reasonable inferences from the available evidence regarding Ms. Closser's motivation to work; his conclusion was based on substantial evidence and was therefore not made in error.

### 5. Post-Onset Work Attempt

Finally, Ms. Closser argues that the ALJ improperly used testimony regarding Ms. Closser's attempt to operate her own online business in 2003, after her alleged disability onset date. She argues that the ALJ did not identify why this failed attempt undermined Ms. Closser's general credibility and that no evidence supports the ALJ's conclusion that the attempt conflicted with Ms. Closser's testimony. The Court finds that the ALJ did not err by considering this evidence.

The ALJ may consider work done by a claimant that does not rise to the level of substantial gainful activity as evidence that the claimant was able to do more work than alleged. 20 C.F.R. § 404.1571. Here, the ALJ cited Ms. Closser's testimony that she worked approximately 20 hours per week for eight months maintaining the website and doing the accounting and purchasing for her own online store selling unusual gifts. AR 25, 45-46. This testimony, in the ALJ's view, was evidence of Ms. Closser's functional abilities after her alleged onset date. Ms. Closser also testified that after the first eight months her time spent working on

the business decreased to approximately half an hour per day because she had become "weaker" and "more depressed" and had run out of savings to support the business. AR 46.

The ALJ did not explain in detail why this particular evidence undermined Ms. Closser's credibility; however, his discussion of it appeared at the end of several paragraphs detailing Ms. Closser's daily activities and functional abilities. AR 24-25. At the beginning of that discussion, the ALJ stated, "In terms of the claimant's alleged inability to perform work activity, I find that the claimant's allegations of total disability are unsupported. In reaching this conclusion, I find that the claimant is only partially credible, and accord her statements and reports only moderate weight." AR 24. Although the ALJ did not include text specifically tying his discussion of Ms. Closser's self-employment with that statement, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755 ("It is true that the ALJ did not recite the magic words, 'I reject Dr. Fox's opinion about the onset date because....' But our cases do not require such an incantation.").

The logical reading of the ALJ's written decision is that Ms. Closser's self-employment was considered as evidence that her functional abilities after the alleged onset of disability conflicted with her claims of total disability. Although Ms. Closser's uncontradicted testimony is that after eight months her depression and "weakness" played some role, in addition to financial trouble, in diminishing her ability to perform that work, the initial eight months and her abilities during that period are still relevant in considering what Ms. Closser's actual abilities were after the alleged onset of disability. The ALJ's consideration of Ms. Closser's self-employment was not improper and his conclusion is supported by substantial evidence.

PAGE 18 – OPINION AND ORDER

### C.  Weight of Medical Opinion Evidence

Ms. Closser argues that the ALJ improperly rejected the opinion of Dr. Rath and failed to articulate clear and convincing reasons for doing so. She argues that Dr. Rath's opinion was not contradicted by the opinions of any other treating or examining physicians and the ALJ was therefore required to provide clear and convincing reasons for rejecting it and was also required to consider specific criteria set forth in 20 C.F.R. § 404.1527. Finally, she contends that Dr. Rath's treatment notes reporting that Ms. Closser had "normal systems" are not proper evidence for rejecting a fibromyalgia diagnosis, and that the ALJ improperly speculated as to the basis for Dr. Rath's opinion. The Court finds that the ALJ provided clear and convincing reasons for rejecting Dr. Rath's opinion.

If a treating physician's medical opinion is not inconsistent with other substantial evidence in the record and is supported by medically acceptable clinical findings, that opinion is given controlling weight. *Holohan v. Massanari*, 246 F.3d 1195, 1202; 20 C.F.R. § 404.1527(c)(2). An ALJ may reject a treating physician's uncontradicted medical opinion only for "clear and convincing" reasons supported by substantial evidence in the record. *Holohan*, 246 F.3d at 1202 (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831-32. A treating physician's statements must be read in the context of the overall diagnostic picture he draws. *Holohan*, 246 F.3d at 1205 (finding that the fact that a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean the impairments no longer seriously affect claimant's ability to function in a workplace); *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201 (9th Cir. 2008) (references in physician's notes that

claimant's anxiety and depression were "improving" not sufficient to undermine the repeated diagnoses of those conditions).

The ALJ can reject a treating physician's opinion if that opinion is premised on the claimant's subjective complaints and the ALJ has already validly discounted the claimant's complaints. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Webb*, 433 F.3d 683, 688 (9th Cir. 2005). *But see*, *e.g.*, *Ryan*, 528 F.3d at 1199 ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001)).

In this case, Dr. Rath completed a questionnaire on December 22, 2011, four years after Ms. Closser's date last insured, relaying Dr. Rath's opinions regarding Ms. Closser's limitations and impairments. AR 631. The ALJ concluded that the opinion was due little weight because it was contradicted by Dr. Rath's own treatment notes, appeared to be based upon Ms. Closser's own subjective complaints, and was contradicted by the DDS consultants' determination. AR 25.

Dr. Rath opined that, among other things, Ms. Closser suffered from chronic pain due to fibromyalgia meeting the American College of Rheumatology 1990 Criteria for Classification of Fibromyalgia ("ACR Criteria"). AR 631. Although Dr. Rath indicated that Ms. Closser suffered from pain at 11 of 18 tender points as required by the ACR Criteria, he did not fill out the portion of the questionnaire indicating which points applied to Ms. Closser. AR 631. Dr. Rath opined that Ms. Closser could not walk for more than five to ten minutes at a time, could not sit for more than 30 minutes at a time, and could not stand or walk for more than an hour total per day, but did not indicate anything regarding how much weight Ms. Closser could lift or how long she

could sit total per day. AR 631-32. Dr. Rath indicated that Ms. Closser would require up to three additional hours per day of rest in a lying down or reclining position to relieve pain and fatigue, that her ability to push or pull was limited in both her upper and lower extremities, and that she should never climb, balance, stoop, crouch or reach and only occasionally engage in gross manipulation, fine manipulation, and feeling. AR 632-33.

Dr. Rath also noted that Ms. Closser had no visual or communicative limitations, should avoid even moderate exposure to hazards and extreme temperatures, and that her pain and fatigue ranged between four and eight and five and eight, respectively, on a ten point scale. AR 633-34. Finally, Dr. Rath opined that Ms. Closser often suffered mild to moderate symptoms of a depressive disorder including pervasive loss of interest, decreased energy, and difficulty concentrating or thinking; as well as that she suffered from "marked" limitations in concentration, persistence, or pace, and social functioning, and moderate limitations in her activities of daily living. AR 634-36. Dr. Rath ultimately concluded that Ms. Closser would be permanently unable to work "all" days. AR 636.

In rejecting Dr. Rath's opinion, the ALJ cited Dr. Rath's treatment notes showing that on March 15, 2006, Ms. Closser was "in fairly good spirits" and "on exam had normal systems." AR 25. On June 11, 2007, Dr. Rath's notes indicated that Ms. Closser was "doing fairly well" and that her fibromyalgia was "under better control." AR 25. Inconsistency between a doctor's responses to a questionnaire and his own medical records provides an independent specific and legitimate reason to reject that doctor's opinion on limitations. *Tommasetti*, 533 F.3d at 1041. Although Dr. Rath's notes must be read in context, Dr. Rath's other notes do not indicate that Ms. Closser's baseline symptoms from which she may have shown relative improvement were as severe before the date last insured as the questionnaire completed four years later indicates.

PAGE 21 – OPINION AND ORDER

The ALJ asserted that Dr. Rath's opinion seems to be based on Ms. Closser's subjective complaints, the credibility of which the ALJ properly rejected. *See supra*, Part B. There is little evidence in the record of clinical findings supporting Dr. Rath's opinion. Although fibromyalgia is not an impairment that is confirmed by clinical findings and objective medical evidence, Dr. Rath's opinion extends to more than just Ms. Closser's fibromyalgia, and the ALJ rejected Ms. Closser's subjective complaints for more reasons than solely a lack of objective medical evidence. *See supra*, Part B.

The only opinions cited by the ALJ that contradict Dr. Rath's are those of the DDS consultants, all of whom are non-examining physicians. AR 25. Although the opinions of non-examining physicians cannot provide the *sole* basis for rejecting the opinion of a treating physician, *see Lester*, 81 F.3d at 831-32, the ALJ gave other reasons in his decision. The ALJ found that Dr. Rath's opinion is contradicted by his own treatment notes, is based on Ms. Closser's subjective complaints, does not comport with the medical evidence in the record as a whole, and is contradicted by Ms. Closser's activities of daily living. AR 25. The ALJ also asserted that Dr. Rath's opinion does not comport with the medical evidence as a whole or with Ms. Closser's activities of daily living.

Finally, the ALJ also noted that Dr. Rath's questionnaire was completed in 2011, nearly four years after Ms. Closser's date last insured. It is not clear from any of the evidence in the record whether Dr. Rath considered only Ms. Closser's symptoms from before her date last insured in 2007 or all of her symptoms through the date of the questionnaire in 2011.

Even if Dr. Rath's opinion was meant to encompass Ms. Closser's symptoms from before the date last insured, however, the ALJ's rationale that Dr. Rath's opinion was contradicted by his own treatment notes, was based on Ms. Closser's subjective complaints, and was contradicted

by the DDS consultants' determination is clear and convincing. The ALJ did not err by determining that Dr. Rath's opinion was due little weight.

Further, even if the ALJ did not provide clear and convincing reasons to reject Dr. Rath's opinion, his opinion came in the form of a questionnaire requiring little or no explanation or clinical support, and significant portions of that questionnaire were left blank. Under such circumstances, the ALJ was not required to accept Dr. Rath's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

**D.  Past Relevant Work**

Ms. Closser argues that the ALJ erred by failing to obtain a "detailed description" of Ms. Closser's past relevant work sufficient to support a conclusion that she could return to that work. Pl.'s Opening Br. 11, Dkt. 14. She cites a "Work History Report" in the record that is blank with regard to the duties and requirements of her previous occupations as proof that the ALJ did not obtain sufficient information from either Ms. Closser, the Dictionary of Occupational Titles ("DOT"), or a Vocational Expert ("VE"). AR 180-95. The Commissioner concedes that the ALJ's determination that Ms. Closser could perform past relevant work *as generally performed in the national economy* was not supported by substantial evidence and was therefore made in error, but argues that the ALJ's other determinations regarding Ms. Closser's past relevant work were proper. Def.'s Responsive Br. 20, Dkt. 16.

Work that a claimant performed within the last 15 years, which lasted long enough for him or her to learn to do, and was substantial gainful activity, is considered past relevant work. 20 C.F.R. § 404.1565(a). The ALJ is not required to obtain testimony from a VE at this stage. *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996). The burden of proof lies with the claimant at step four to demonstrate that she is unable to perform her past relevant work. *See, e.g.,*

*Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The ALJ, however, still has a duty to make the requisite factual findings to support a conclusion that the claimant is able to perform her past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); SSR 82-62, 1982 WL 31386 at *3 (Jan. 1, 1982); 20 C.F.R. §§ 404.1571, 404.1574, 404.1565. This is done by looking at the claimant's RFC and the physical and mental demands of the claimant's past relevant work. *Pinto*, 249 F.3d at 844-45; 20 C.F.R. § 404.1520(e).

The claimant must be able to perform the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Pinto*, 249 F.3d at 845; SSR 82-61, 1982 WL 31387 (Jan. 1, 1982). This determination requires "specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Pinto*, 249 F.3d at 845; SSR 82-62. The regulations advise an ALJ to first consider past work as *actually* performed, and then as *usually* performed. *Pinto*, 249 F.3d at 845 (citing SSR 96-8P, 1996 WL 374184 (July 2, 1996)).

Social Security regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82-61, and the claimant's own testimony, SSR 82-41, 1982 WL 31389 (Jan. 1, 1982). *Pinto*, 249 F.3d at 845. The best source for how a job is generally performed is usually the DOT. *Id.* at 845-46; *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); 20 C.F.R. § 404.1566(d); SSR 82-61.

The ALJ did not err in determining that Ms. Closser could return to her past work as a call technician. He did err, however, in determining the duties of Ms. Closser's past work as a

computer programmer and in finding that Ms. Closser could return to that position. The ALJ determined that Ms. Closser was able to return to her past relevant work because her previous jobs as a computer programmer and a call technician were performed at the sedentary exertion level, primarily involving sitting at a desk, consistent with the RFC determined by the ALJ. AR 26. In support of this determination the ALJ cited the blank Work History Report and Ms. Closser's testimony at the hearing that the call technician position involved answering the phone and providing technical support for eight hours a day, five days a week. AR 26. The ALJ listed the basic duties involved with Ms. Closser's work as a call technician, but did not make any specific factual findings regarding her work as a computer programmer. AR 26. The ALJ found that the requirements of both positions were not incompatible with Ms. Closser's RFC and that Ms. Closser could return to either. AR 26.

Although Ms. Closser is correct that the blank Work History Report does not support the ALJ's determination, the record is not devoid of a description of Ms. Closser's duties and requirements as part of her past relevant work. In fact, a second Work History Report appears in the record and is properly completed, indicating the duties, activities and physical exertion required by both Ms. Closser's jobs as a computer programmer and a call technician. AR 204-11. This report, however, only provides substantial evidence for part of the ALJ's determination.

The information provided by Ms. Closser both at the hearing and in the completed Work History Report shows that the call technician position is consistent with her RFC requiring sedentary work. AR 205. Ms. Closser described that position as never requiring lifting more than 10 pounds, and involving only sitting for eight hours per day. AR 205. Accordingly, the ALJ did not err by finding that Ms. Closser could return to her past position as a call technician.

PAGE 25 – OPINION AND ORDER

The only information in the record regarding the requirements of the computer programmer job is contained in the completed Work History Report. That uncontradicted evidence shows that Ms. Closser was occasionally required to lift "30 to 40" pounds. AR 208. A sedentary exertion level does not allow for lifting more than 10 pounds at any time, 20 C.F.R. § 404.1567(a), inconsistent with Ms. Closser's duties as a computer programmer.

The ALJ erred by determining that Ms. Closser's past work as a computer programmer could be performed at the sedentary exertion level. The ALJ's decision contains no specific findings regarding the duties or requirements of that position and is not supported by substantial evidence in the record. The only evidence in the record indicates that Ms. Closser's work as a computer programmer as actually performed required greater than a sedentary exertion level. That error, however, is harmless. The ALJ properly determined that Ms. Closser could return to her past relevant work as a call technician, and the ALJ's error is therefore irrelevant to his ultimate conclusion. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## CONCLUSION

The Commissioner's decision that Ms. Closser was not disabled between the alleged disability onset date and date last insured is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 23rd day of July, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge